Matter of Cohn (2025 NY Slip Op 01627)

Matter of Cohn

2025 NY Slip Op 01627

Decided on March 19, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
LINDA CHRISTOPHER, JJ.

2022-00726 

[*1]In the Matter of Steven Cohn, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Steven Cohn, respondent. (Attorney Registration No. 1487933)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 5, 1975.

Catherine A. Sheridan, Hauppauge, NY, for petitioner.
Michael S. Ross, New York, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a notice of petition and a verified petition, both dated June 21, 2022, containing four charges of professional misconduct. The respondent served and filed an answer dated July 21, 2022, admitting to some of the factual allegations contained in the verified petition but denying that he violated the Rules of Professional Conduct (22 NYCRR 1200.0) cited therein. By decision and order dated October 13, 2022, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. A prehearing conference was held on November 29, 2022, and the hearing was held on March 8, 2023. In a report dated June 23, 2023, the Special Referee sustained all four charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as this Court deems just and proper. The respondent, through counsel, cross-moves, inter alia, (1) to confirm the findings of fact in the Special Referee's report; (2) to disaffirm the conclusions of law in the Special Referee's report; and (3) to disaffirm the Special Referee's report insofar as it sustained the charges against him.
The Petition 
The verified petition contains four charges of professional misconduct. At all times relevant herein, the respondent maintained and was the sole signatory of two attorney trust accounts at Chase Bank: (1) a trust account entitled "Steven Cohn PC Attorney Trust Account IOLA," with an account number ending in 1229 (hereinafter the 1229 Account); and (2) an account entitled "Steven Cohn Esq. PC Attorney Special Account Real Estate," with an account number ending in 1237 (hereinafter the 1237 Account).
Between in or about 1992 through on or about September 19, 2020, the respondent employed Kathi Ward as a paralegal. Beginning in or about March 2020 through September 2020, the respondent delegated to Ward responsibilities in connection with the maintenance of the 1229 [*2]Account and the 1237 Account, including writing checks against both accounts by signing the respondent's name on the checks, recording deposits and disbursements on individual client ledgers and general ledgers, and performing monthly reconciliations of the accounts.
Between July 17, 2020, through September 22, 2020, the respondent had funds entrusted to him as a fiduciary, incident to the practice of law, and the sum of $41,833.34 in earned legal fees on deposit in the 1237 Account. During the same period, Ward issued five checks totaling $50,140.64 against the 1237 Account for her own benefit when there were no correlating funds on deposit for the checks that she issued. Between July 17, 2020, and September 22, 2020, the respondent failed to properly review, audit, and reconcile the 1237 Account.
Based on the factual allegations above, charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge two alleges that the respondent failed to exercise reasonable management and supervisory authority over a non-lawyer employee, in violation of rule 5.3(a) and (b)(2)(ii) of the Rules of Professional Conduct. Charge three alleges that the respondent commingled personal funds with funds that had been entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct. Charge four alleges that the respondent engaged in conduct that adversely reflected on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing and Hearing Record 
The respondent testified that in March 2020, his firm employed seven attorneys, two full-time paralegals, and a part-time bookkeeper, Diane Paradiso. The respondent was a member of the Board of the Nassau University Medical Center, and he chaired the Legal and Audit Committee and the Governance Committee for the hospital.
The respondent's firm maintained two attorney trust accounts: (1) the 1229 Account for negligence matters, and (2) the 1237 Account for real estate and commercial transactions. With regards to the 1229 Account, the respondent's secretary, Georgia Gehrling, maintained a ledger of all the expenses related to that account and provided a breakdown of how the money was to be allocated, which was then approved by the respondent. The respondent directed Gehrling to prepare the requisite checks, which the respondent would sign, and Gehrling distributed those checks to the appropriate parties. With regards to the 1237 Account, Ward maintained the account and provided a breakdown of funds in the account and how the money was to be allocated. The respondent verified the accuracy of Ward's accounting and directed Ward to prepare the appropriate checks, which the respondent would sign and Ward would distribute to the appropriate parties. However, the respondent testified that during real estate closings, there were occasions when the amount of the check to be drafted was not predetermined, and Ward, after confirming those amounts with the respondent through a telephone call, was given permission by the respondent to sign his name and issue the check. While the respondent had a signature stamp, he was concerned that it would be lost or stolen, and so the respondent had Ward sign his name on the checks.
The respondent testified that he reconciled both trust accounts on a monthly basis and that he would compare the bank statements and the check stubs against the general ledger. While in the office, the respondent would "spot check" the checkbooks and client accounts on a periodic basis. Beginning in March 2020, after the onset of the COVID-19 pandemic, the respondent was advised by his physician to isolate, and he did so at his home in upstate New York until September 2020. From March 2020 through September 2020, the respondent arranged for an attorney at the firm to pick up the mail from the post office and deliver it to the respondent's office. Ward periodically came into the office to monitor the mail and handle any emergencies that arose. Gehrling, who handled the 1229 Account, resigned in March 2020. Thereafter, Ward was given the passwords to access and was responsible for managing both the 1237 Account and the 1229 Account. The respondent testified that his tenant, Nadine Malone, a mortgage banker, agreed to check the trust accounts in his absence, and agreed to mail the bank statements and any documents related to the trust accounts to the respondent at his upstate home. Ward packaged together the client ledger, general ledger, and a photostat of the checks, and gave those documents to Malone. The respondent reviewed the records upon their receipt. Malone continued to send records to the respondent until she fell ill in July 2020, at which point she no longer went into the office. The respondent testified that while he was isolating at his home upstate, he remained responsible for the trust accounts, directed which checks were to be drafted and deposited, and was available for questions via telephone. The respondent testified that his home upstate was not equipped with the necessary firewall and shared drives to access his escrow accounts online, and that he did not bring his trust [*3]account checkbooks with him in his absence. The respondent stated that he did not reconcile his trust accounts for one month, that being the July 2020 reconciliation, which he would have normally performed in August 2020.
With regards to a dishonored check issued against the 1229 Account that prompted the investigation by the Grievance Committee for the Tenth Judicial District, the respondent testified that his firm had $50,000 on deposit in the 1237 Account on behalf of his client, Robert Abatemarco, for a matter involving a contract dispute. Of those funds, $45,000 was held on behalf of Abatemarco and $5,000 represented the respondent's legal fee. The respondent stated that on July 13, 2020, Ward disbursed the $45,000 in funds on behalf of Abatemarco to the law firm La Reddola Lester & Associates; however, Ward disbursed the funds from the 1229 Account as opposed to the 1237 Account. The respondent alleged that Ward did not inform him of the error. Instead, upon learning of the dishonored check, on July 14, 2020, Ward made an unauthorized transfer of $20,000 from the 1237 Account into the 1229 Account to cover the deficit. Ward further instructed two of the respondent's clients, who at the time happened to be transferring a total of $25,000 in earned legal fees for unrelated matters, to transfer the funds to the 1229 Account instead of the firm's operating account. Ward then contacted the recipient of the dishonored check, advised them of the error, and asked that they redeposit the subject check, which was then paid on July 21, 2020.
The respondent testified that on or about September 19, 2020, he received a telephone call from Malone, who informed the respondent that a check had been dishonored from one of his trust accounts, and that Ward had received a letter from the Grievance Committee regarding the dishonored check, but never disclosed the letter to the respondent. The respondent testified that when he was informed of the Grievance Committee's letter, he felt "shocked, frightened, and angry," and that he directed Malone to immediately fire Ward. Upon his return to the office, the respondent began to investigate the dishonored check. By the end of September 2020, the respondent discovered that between July 17, 2020, through September 22, 2020, Ward issued five checks totaling $50,140.64 against Account 1237, made payable to Ward and to Chase Bank. The respondent testified that such activity was "not unusual" because there had been occasions where clients had bought a car for Ward, taken her on vacation, or lent her money. Nevertheless, the respondent deposited personal funds into the 1237 Account to cover the deficit for the checks that Ward had written and to ensure no additional client checks were dishonored. According to the respondent, he was not aware that Ward had "stolen" the funds until approximately December 22, 2020, when Paradiso, the bookkeeper, sent a text message to Ward inquiring about the location of certain bank records requested by the Grievance Committee, to which Ward responded that she had destroyed them. Thereafter, the respondent directed his counsel to contact the Nassau County District Attorney's Office to pursue charges. Ultimately, no charges were filed against Ward.
The respondent testified that at the time of his initial response to the Grievance Committee in October 2020, he was unaware of the "theft," and was aware only that the dishonored check had been returned for insufficient funds. In January 2021, the respondent supplemented his response to the Grievance Committee to notify it of the "theft" and to inform the Grievance Committee that he had notified the Nassau County District Attorney's Office of the "theft."
The respondent denied commingling funds, despite the fact that earned legal fees were present in the trust accounts. The respondent maintained that he did not authorize the legal fees to be transferred into the trust accounts, was not aware that legal fees were present in the trust accounts, and that he believed he exercised reasonable supervision over Ward under the circumstances. As to remedial measures, the respondent testified that he fired Ward. The respondent also changed the colors of the checks associated with each trust account so that there would be no confusion regarding the two accounts, although there was no assertion that the misappropriation occurred due to any confusion of checks.
The Grievance Committee moves to confirm the report of the Special Referee which sustained all charges against the respondent.
The respondent cross-moves, inter alia, (1) to confirm the findings of fact in the Special Referee's report; (2) to disaffirm the conclusions of law in the Special Referee's report; and (3) to disaffirm the Special Referee's report insofar as it sustained the charges against him.
Findings and Conclusion 
In the instant matter, the respondent left his law practice to isolate due to the COVID-19 pandemic and left the responsibility of his trust accounts to Ward. She had access to the trust account passwords, checkbooks, ledgers, and bank statements, which she prepared and packaged for Malone to mail to the respondent at his upstate home. In July 2020, when Malone fell ill and could [*4]no longer mail the bank statements and trust account documents to the respondent, Ward had no oversight of her activities in the office. It was during this period of time, from July 2020 through September 2020, that Ward "stole" approximately $50,000 in client funds. Ward concealed her actions by directing clients to transfer their legal fees into the 1229 Account and then transferred funds between the trust accounts. Even when the subject check was dishonored in July 2020, the respondent was unaware of such until just prior to his return to the office in late September 2020. The respondent deposited personal funds to cover the deficit; however, he did not perform a full reconciliation of the trust accounts and was unable to recognize Ward's "theft" until approximately three months after he returned to the office, which was approximately six months after Ward's intial "theft."
In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted. In determining an appropriate measure of discipline, this Court considered, inter alia, the challenging circumstances the respondent faced during the COVID-19 pandemic, the remedial measures implemented, and the substantial character evidence presented.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of six months.
LASALLE, P.J., DILLON, DUFFY, BARROS and CHRISTOPHER, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the branch of the respondent's cross-motion which is to confirm the findings of fact in the Special Referee's report is granted, and the cross-motion is otherwise denied; and it is further,
ORDERED that the respondent, Steven Cohn, is suspended from the practice of law for a period of six months, commencing April 18, 2025, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 18, 2025. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), and (3) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Steven Cohn, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. ); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Steven Cohn, shall desist and refrain from (l) practicing law in any form, either as principal or as agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Steven Cohn, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court